## CELINA LA BRIE, ADMX.
### *vs.*
## C. E. HALL & SONS, INC.

Superior Court          Hartford County          File No. 65929

MEMORANDUM FILED DECEMBER 29, 1942.

*Robinson, Robinson & Cole*, of Hartford, for the Plaintiff.

*Schatz & Weinstein*, of Hartford, for the Defendant.

Memorandum of decision in action for wrongful death.

O'SULLIVAN, J.  On February 4, 1941, about an hour after sundown and when darkness had fallen, one of the de-

fendant's employees was operating a tractor southerly through the township of Glastonbury over a public highway known as Route No. 2. He had reached Dickinson Hill, so-called, a respectable grade, up which the tractor was very slowly climbing. The paved concrete portion of Route No. 2 was 18 feet in width and at the point where the hereinafter related events occurred, it was flanked on either side by approximately six foot shoulders which fell away as they receded from the concrete. Previously fallen snow partially covered the shoulders but none was on the paved portion of the highway.

The tractor was hauling a low, platform trailer on which was a 55 ton crane, whose long steel boom hung in a substantially horizontal position well out over the rear. The crane was equipped with caterpillar treads so far apart, one from the other, that while the platform was capable of accommodating the crane's cab and machinery, each caterpillar extended out and hung down from the side of the trailer so that a matter of probably six inches separated the bottom of the treads from the ground. From the outside edge of one caterpillar to that of the other was two inches short of 12 feet.

While two lighted red lanterns hung from the boom, neither was visible to traffic headed northerly, as the large cab of the crane blocked the view. On each side of the trailer was a reflector and four red tail lights were in operation. A red lantern hung from each side of the crane's cab in such a position as to be about four feet from the ground and almost three feet from the outside edge of the caterpillar. Nothing was on the trailer in the nature of an illuminated warning to indicate that beyond these last mentioned lights, two caterpillars, each being two feet 11 inches wide and 15 feet long, extended out from either side of the trailer, to the operators of oncoming vehicles, the main, if not the only visible lights were those from the headlights and from three small lights set in an arc over the driver's cab, two being amber in color and the other one green.

Headed northerly at this time and place, and moving at a speed of 35 to 40 miles per hour, was a Plymouth sedan operated by George Anderson, the plaintiff in a companion action. Three passengers were with him, one sitting at his side, and Remeo La Brie and another on the back seat. All four were homeward bound to Hartford from their daily work on a construction job in Groton. As Anderson approached the tractor, he saw its front lights but there was nothing to

indicate to him that an unusually large object was headed his way or that the caterpillar of a crane was beyond the center line and partially blocking his half of the highway. The inevitable occurred. As the Plymouth was passing the trailer, its left front collided with the caterpillar, causing the sedan to slue around, counter-clockwise, and almost instantly to come to a stop on its four wheels on the same side of the highway upon which it had been traveling, but headed at right angles to approaching traffic. La Brie was hurled, in some unexplained fashion, out of the car to the pavement and lay there unconscious. The passenger in the front seat was thrown to the floor. Anderson remained behind the wheel, stunned and disoriented. The other passenger got out of the car and wandered about aimlessly.

In the meantime, the tractor had stopped and its operator sent a helper to the disabled men. Just about this time, two automobiles approached, one from the north, the other from the south. The driver of each, after sensing the need for assistance and after some of his passengers had left the car, turned around to seek aid and to summon the authorities.

Just why the several persons who arrived or were at the scene failed to get Anderson and the other out of the car or to remove the prostrate form of La Brie from the concrete will remain a mystery. Probably they did not see the unconscious man on the highway, for it was very dark, save where the headlights shone. And it is equally probable that they failed to realize, after speaking to Anderson and receiving replies from him, that he was still completely dazed and unable to appreciate the danger of his remaining in his automobile. But all of this is indulging in observations made from the vantage point of hindsight.

At any rate, at least two minutes and perhaps one or two more elapsed after the collision when a third automobile neared the scene from the south. It was driven by one Kaufman and was traveling at about 45 miles an hour. He, too, saw, as had Anderson, the front lights of the tractor. He managed to pass the trailer without colliding with the caterpillar but he did not see the Anderson car blocking his path until its left side suddenly loomed up before him at a distance too short to avoid the terrific crash that followed. The Plymouth was shoved ahead and over La Brie, as he lay on the concrete, causing him mortal injuries from which he died three days later.

The foregoing will sufficiently background the obvious question which immediately suggests itself and whose answer is determinative of liability: was the defendant's negligence the proximate cause of La Brie's death? I put the query in this form because the facts can justify no other conclusion than that the negligence of the defendant was the sole cause of the first collision. To haul such a huge object as was this crane, with a part of it partially blocking the half of the highway which Anderson had the right to use, with an absence, at this dark spot, of any type of illumination to indicate the overhang of the crane, spells out negligence in capital letters. And in passing, it should be observed that no negligence of Anderson, and still less of La Brie, had any connection with either the first or the second crash.

Whether the defendant's negligence was a proximate cause of La Brie's death presents a problem for the trier to solve. It is often referred to as the finding of a fact. *Nichols vs. Watson,* 119 Conn. 637, 640; *Boileau vs. Williams,* 121 id. 432, 439; *Cuneo vs. Connecticut Co.,* 124 id. 647, 651. But whether it be a conclusion or a fact, the reasoning which I have pursued may be expressed as follows:

The original negligent conduct of the defendant was solely responsible in the legal sense for the first crash. Had Kaufman not come along, the effects of that crash would have been of relatively minor importance. Actually, those effects were twofold. In the first place, four persons were physically harmed, and in the second place they were all thrown into a position of appreciable risk from which three never did escape.

In other words, the defendant's negligence resulted not only in causing minor physical injuries but also in creating a condition fraught with additional peril to their safety. This condition was, so to speak, static and the complete results of the original act of negligence were unascertainable until the risk from normal events arising out of that condition had been eliminated. Not that the defendant would necessarily be liable for all consequences that occurred while the risk remained alive. If a superceding human agency caused new injuries to these men who had been thrown into a zone of danger, the defendant's primary negligence would lose the required characteristics of being a substantial factor in producing the additional injuries. The simultaneousness of a new cause with the negligence of the defendant is not the

controlling factor. To be sure, it is an important element in determining whether the prior negligence is a remote rather than a proximate cause. *Corey vs. Phillips,* 126 Conn. 246, 256. However, if prior negligent conduct has resulted in producing a static condition, though that negligence is not simultaneous with the negligence of another which results in injury to a plaintiff, the former may still be a proximate cause of the accident. *Kinderavich vs. Palmer,* 127 Conn. 85, 96.

The vital question, then, is whether Kaufman's participation, as an intervening independent cause, supercedes the prior negligence of the defendant. I am satisfied it did not, even on the assumption that Kaufman was negligent.

There is a direct causal relation between the negligence of the Hall Company and La Brie's death. That the act of another entered to complete the catastrophe did not break the chain of causation leading from the former to the latter. Indeed, the peril into which the defendant's negligence threw La Brie required the intervening act of a third person to consummate the second collision. It was the risk of the very thing that happened which the defendant caused.

"The injury resulting from the breach of duty need not be the direct or immediate result of the wrongful act; if it is probable and a natural result, that is according to the operations of natural laws, it is enough. . . . The mere fact that the act of another person concurs, cooperates or contributes, in any degree whatever in producing the injury, is of no consequence." If the chain is to be deemed broken, the intervening cause, whether intelligent or not, must so entirely supercede the operation of the defendant's negligence that it alone produces the injury, or it must be the non-concurring culpable act of a human being who is legally responsible for such act. *Lombardi vs. Wallad,* 98 Conn. 510, 517. Neither alternative recited in the above excerpt is present in the instant case. It follows that the second collision was the result of an intervening but not a superceding cause, and for all the consequences of both crashes, the defendant should be held liable.

La Brie was 46 when he died. His life expectancy was almost 24 years. He was married and his work was that of a labor foreman. His weekly base pay was $40, but due to overtime he had earned $2,271.75 during 1940. The inventory of his estate showed a gross of $6,887.72 from which both *ante* and *post mortem* allowable claims amounting to $946.78

must be paid. He was an efficient workman and a man of good health and frugality. The economic loss his estate has suffered is determined to be the sum of $12,500.

La Brie did not die until February 7th. He suffered no pain after the collision because of his unconscious condition. There were, however, certain *ante mortem* items of damages to which the plaintiff is entitled. These items follow:

Hartford Hospital .............. $105.50
Thacher W. Worthen, M.D. ....    150.00
William B. Scoville, M.D. ......     15.00
Nurses ......................     70.00

Total ........................ $340.50

Let judgment enter for $12,840.50 against the defendant